Filed 1/14/22  Cruz v. Valerio Townhomes Homeowners Assn. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| GUADALUPE CRUZ,<br><br>        Appellant,<br><br>    v.<br><br>VALERIO TOWNHOMES HOMEOWNERS ASSOCIATION,<br><br>        Respondent. | B303641<br><br>(Los Angeles County Super. Ct. No. LS030053) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Virginia Keeny, Judge.  Affirmed.

Alfred O. Anyia for Appellant.

Donahoe Young & Williams, Mark T. Young & Lucas E. Rowe for Respondent.

# I. INTRODUCTION

Appellant Guadalupe Cruz owned a townhouse in Van Nuys, California. When she defaulted on her mortgage, the trustee under the deed of trust sold the townhouse in a nonjudicial foreclosure sale. The sales proceeds exceeded the amount necessary to satisfy the loan, so the trustee gave notice of the surplus to all persons with a recorded interest in the townhouse. Respondent Valerio Townhomes Homeowners Association (the HOA), the homeowners association for Cruz's townhouse, filed a claim with the trustee for a portion of the surplus proceeds. Because Cruz disputed the HOA's claim, the trustee deposited the surplus proceeds with the clerk of the Superior Court and the trial court conducted a bench trial on the HOA's claim. The court entered judgment in the HOA's favor and directed the clerk to distribute $94,873.97 to the HOA and the remainder to Cruz. Cruz appeals and we affirm.

# II. BACKGROUND

Pursuant to a deed of trust recorded on September 13, 2005, Cruz purchased a townhouse at Valerio Street in Van Nuys California (the property). Thereafter, Cruz defaulted on the deed of trust encumbering the property.

On September 28, 2017, Western Progressive, LLC (Western), trustee under Cruz's deed of trust, sold the property for $255,000 in a nonjudicial foreclosure sale. After the sale, there was $115,513.95 in surplus proceeds available to claimants. Western gave notice of the surplus proceeds to all persons with a recorded interest in the property. (Civ. Code, § 2924j, subd. (a).)

Western received claims from the HOA ($52,259.25), the Los Angeles County Tax Collector ($1,240.74), and Cruz (unspecified). On February 15, 2018, Western mailed notice of its intent to distribute the surplus proceeds as follows: $52,259.25 to the HOA, $1,240.73 to the Los Angeles County Tax Collector, and the remaining balance to Cruz. On February 22, 2018, Cruz sent Western a letter disputing the HOA's claim.

Because there was a dispute about its proposed distribution of the surplus proceeds that required a trial court's resolution, Western filed in the trial court a Petition and Declaration Regarding Unresolved Claims and Deposit of Undistributed Surplus Proceeds of Trustee's Sale. (Civ. Code, § 2924j, subds. (b) & (c).) Western gave notice to the claimants of its intent to deposit the surplus proceeds with the clerk of the Superior Court.

On March 7, 2018, the trial court ordered Western to deposit the surplus proceeds ($111,710.31—the surplus proceeds less Western's fees and expenses and a filing fee) with the clerk of the court. It set an April 19, 2018, hearing for unresolved claims.

On April 4, 2019, the HOA submitted a claim that it was owed $52,416.95, pursuant to a Notice of Delinquent Assessment Lien (lien) on the property. On April 5, 2018, Cruz filed a claim for "'whatever amount the court deems is the remainder to the surplus funds.'" She asserted that the HOA's claim was "full of over-billed dues and unearned and bogus fees." She also challenged the HOA's compliance with the Davis-Stirling Common Interest Development Act (Davis-Stirling Act).[1]

---

[1] Neither the HOA's nor Cruz's claim is in the record on appeal. We use the trial court's description of the claims.

On July 31, 2019, following a bench trial, the trial court issued a tentative statement of decision. In its tentative statement of decision, it reviewed testimony and evidence the HOA introduced concerning the HOA's monthly assessment and Cruz's assessment delinquencies and late fees. According to the HOA, Cruz had made only eight monthly payments in eight years. On November 6, 2014, the HOA caused to be recorded on the property the lien in the amount of $21,728.78.

In 2015, the HOA attempted to foreclose on the lien. A few days prior to the noticed foreclosure sale, however, Cruz filed a Chapter 13 bankruptcy petition, preventing the sale. The trial court took judicial notice of a Debtor's Notice of Motion and Motion to Avoid Junior Lien that Cruz filed in the bankruptcy case that sought to avoid the HOA's lien. It also took notice of the bankruptcy court's March 28, 2016, order denying the motion.

The trial court's statement of decision also reviewed testimony and evidence Cruz offered concerning the HOA's alleged failure to comply with the Davis-Stirling Act and other alleged transgressions. Reinaldo Bonifasi, Cruz's son, testified that he had proposed to the HOA's board a repayment plan to address his mother's assessment delinquencies and late fees. When he did not get an immediate response, he consulted an attorney who advised him to proceed to bankruptcy.

In its tentative statement of decision, the trial court ruled that the HOA failed to establish a legally valid lien. It failed to establish that it had complied with three parts of the Davis-Stirling Act: "1) pre-lien notice; 2) notice of recordation of the

---

The Davis-Stirling Act sets forth the statutory duties of homeowners' associations. (*Ostayan v. Nordhoff Townhomes Homeowners Assn., Inc.* (2003) 110 Cal.App.4th 120, 127.)

4

lien; and 3) legally binding vote by the board to record the lien." Accordingly, the HOA was not entitled to any part of the surplus proceeds.

The HOA filed objections to the trial court's proposed statement of decision and a request that the court take judicial notice of documents from Cruz's bankruptcy case. Those documents included the HOA's proof of claim for the lien and the Case Summary and Claims Register that reflected that Cruz did not file an objection to the HOA's proof of claim.

The HOA argued that Cruz had not challenged the validity of the lien by objecting to the proof of claim in her bankruptcy case resulting in the claim being deemed allowed. An allowed claim is in the nature of a final judgment and res judicata precluded the court from considering the lien's validity. It also challenged the court's determination that it had not complied with the Davis-Stirling Act. Based on the HOA's objections, the court set the matter for hearing and permitted the parties to brief the issues further.

On September 18, 2019, after further briefing and argument, the trial court ruled, "I am persuaded that there is preclusive effect that must be given to the allowance of the lien, and that this court did not have the ability to reconsider the validity of the lien in this proceeding."

On October 1, 2019, the trial court issued a new tentative statement of decision. In this tentative statement of decision, the court granted the HOA's request for judicial notice of the documents from Cruz's bankruptcy case. It then ruled, "The lien recorded by the HOA in 2014 is a valid and enforceable lien. While the parties devoted days of testimony challenging and supporting the validity of the underlying lien recorded by the

5

HOA, and the HOA in its trial brief stated that the validity of the lien was an issue for the court to decide, principles of res judicata preclude this court from examining the validity of that lien. Pursuant to 11 U.S.C. § 502(b), '[a] claim . . . , proof of which is filed under section 501 of [Title 11], is deemed allowed, unless a party in interest . . . objects.' [(]11 U.S.C. § 502(b).[)]  The HOA filed a Proof of Claim in Cruz's Chapter 13 case.  Cruz did not object.  For res judicata purposes, a bankruptcy court's order allowing a proof of claim is a final judgment.  (*See Matter of Baudoin* (5th Cir. 1993) 981 F.2d 736, 742; *Siegel v. Fed. Home Loan Mortg. Corp.* (9th Cir. 1998) 143 F.3d 525, 530 [(*Siegel*)]; *United States v. Coast Wineries* (9th Cir. 1942)[] 131 F.2d 643, 648; *Nathanson v. Hecker* (2002) 99 Cal.App.4th 1158, 1164.)"

Because the HOA's claim in bankruptcy court concerning the lien was allowed, the trial court agreed that res judicata prevented Cruz from relitigating the validity of the lien. Accordingly, the court withdrew its determination in its original statement of decision that the lien was invalid because it violated the Davis-Stirling Act.

As to the amount of the lien, the trial court reduced the HOA's request for fees and costs associated with filing the lien and attorney fees to defend the lien in bankruptcy court from $18,617.50 to $10,000.  It also "advise[d]" that the reasonable amount of the HOA's attorney fees for prosecuting its surplus proceeds claim was $35,000; the HOA had requested $56,330.52. The court proposed to reduce the HOA's attorney fees in part because the HOA "did not raise its res judicata argument or even brief that issue until after the evidentiary hearing and after the court had issued its tentative statement of decision.  Had the HOA raised this issue at the first instance, the court and the

parties would have been spared needless expense. The HOA is not entitled to recover attorney's fees spent litigating irrelevant issues, e.g. the validity of the lien, which it could have prevented with a pre-trial motion or trial brief on the issue." If the HOA believed it was entitled to additional fees, it could file a request.

The HOA filed a request for $14,934.04 in additional attorney fees. The record does not contain an express ruling from the trial court on the HOA's request. However, the amount by which the judgment in the HOA's favor—$94,873.97—exceeds the HOA's claimed lien—$45,539.97—is $49,334, or $4,334 more than the tentative statement of decision's attorney fees calculation—$45,000.

## III. DISCUSSION

A. *Waiver*

Cruz contends the HOA waived its res judicata[2] defense to the validity of the lien because it presented evidence in support of the lien's validity apart from its res judicata—or claim preclusion—defense. Further, Cruz contends, she was prejudiced by the HOA's failure to establish its res judicata defense prior to trial thus causing her to incur attorney fees in challenging the lien's validity and in making her responsible for the HOA's attorney fees incurred in litigating the issue.

---

[2] Cruz refers to the HOA's collateral estoppel defense. Although the HOA discussed collateral estoppel in its objections to the tentative statement of decision, it asserted a res judicata— or claim preclusion—defense and the trial court ruled on that res judicata defense.

"'"[W]aiver is the intentional relinquishment of a known right after knowledge of the facts." [Citations.] The burden . . . is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and "doubtful cases will be decided against a waiver" [citation].' [Citations.] The waiver may be either express, based on the words of the waiving party, or implied, based on conduct indicating an intent to relinquish the right. [Citation.]" (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31 (*Waller*).)

"'California courts will find waiver when a party intentionally relinquishes a right or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished.' [Citation.]" (*Waller, supra*, 11 Cal.4th at pp. 33–34.) "The pivotal issue in a claim of waiver is the intention of the party who allegedly relinquished the known legal right." (*DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.* (1994) 30 Cal.App.4th 54, 60.)

With its objections to the court's initial tentative statement of decision, the HOA filed a request for judicial notice of its proof of claim for the lien, the Case Summary, and the Claims Register from Cruz's bankruptcy case. Those documents served as the basis for the HOA's res judicata defense. Cruz does not contend that the trial court erred in granting the HOA's request for judicial notice or in considering the noticed documents. On this record, we reject Cruz's argument that the doctrine of waiver applied, as a matter of law, to preclude the HOA's res judicata defense.

B.      *Res Judicata* (*Claim Preclusion*)[3]

Cruz contends that collateral estoppel or issue preclusion does not apply in this case. As we discuss above, the trial court concluded that the defense of res judicata, or claim preclusion, applied. "'As generally understood, "[t]he doctrine of *res judicata* gives certain *conclusive effect* to a *former judgment* in subsequent litigation involving the same controversy." [Citation.] The doctrine "has a double aspect." [Citation.] "In its primary aspect," commonly known as claim preclusion, it "operates as a bar to the maintenance of a second suit between the same parties on the same cause of action. [Citation.]" [Citation.] "In its secondary aspect," commonly known as collateral estoppel, "[t]he prior judgment . . . 'operates'" in "a second suit . . . based on a different cause of action . . . 'as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action.' [Citation.]" [Citation.] "The prerequisite elements for applying the doctrine to either an entire cause of action or one or more issues are the

---

[3]      "The law of preclusion helps to ensure that a dispute resolved in one case is not relitigated in a later case. Although the doctrine has ancient roots [citation], its contours and associated terminology have evolved over time. We now refer to 'claim preclusion' rather than 'res judicata' [citation], and use 'issue preclusion' in place of 'direct or collateral estoppel' [citations]. [¶] Claim and issue preclusion have different requirements and effects. Claim preclusion prevents relitigation of entire causes of action. [Citation.] . . . Issue preclusion, by contrast, prevents 'relitigation of previously decided issues,' rather than causes of action as a whole." (*Samara v. Matar* (2018) 5 Cal.5th 322, 326–327, fn. omitted.)

same: (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding. [Citations.]'" (*People v. Barragan* (2004) 32 Cal.4th 236, 252[–]253 . . . .)" (*Boeken v. Philip Morris USA, Inc.*, (2010) 48 Cal.4th 788, 797.) "Even assuming all the threshold requirements [of res judicata] are satisfied, however, our analysis is not at an end. We have repeatedly looked to the public policies underlying the doctrine before concluding that [res judicata] should be applied in a particular setting. [Citation.]" (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342–343.) We review de novo the court's application of the doctrine of res judicata or claim preclusion. (*Association of Irritated Residents v. Department of Conservation* (2017) 11 Cal.App.5th 1202, 1218 (*Association of Irritated Residents*) ["Because it is a question of law, we review de novo the trial court's conclusion that res judicata was applicable in this case"].)

Under title 11 of United States Code section 502, subdivision (a), "[a] claim or interest, proof of which is filed under section 501 of this title . . . , is deemed allowed, unless a party in interest . . . objects." The "allowance or disallowance of 'a claim in bankruptcy is binding and conclusive on all parties or their privies, and being in the nature of a final judgment, furnishes a basis for a plea of res judicata.'" (*Siegel, supra*, 143 F.3d at p. 529.) California courts must give full faith and credit to a final order or judgment of a federal court. (*Levy v. Cohen* (1977) 19 Cal.3d 165, 172.)

On January 8, 2016, the HOA filed a proof of claim in Cruz's Chapter 13 bankruptcy case concerning the lien. Cruz did not object to the HOA's proof of claim in her Chapter 13 bankruptcy case. On April 4, 2016, Cruz converted her Chapter 13 bankruptcy case to a Chapter 7 bankruptcy case. She did not object to the HOA's proof of claim in her Chapter 7 bankruptcy case. By order dated July 15, 2016, the bankruptcy court discharged Cruz's case. The case was closed on July 19, 2016.

Because Cruz did not object in bankruptcy court to the HOA's proof of claim concerning the lien, the claim was deemed allowed. (11 U.S.C. § 502(a).) The HOA's allowed claim was binding on Cruz and because it was "'in the nature of a final judgment,'" it served as the basis for a "'plea of res judicata.'" (*Siegel, supra*, 143 F.3d at p. 529.) Cruz's contention that the claim raised in the bankruptcy proceeding is not identical to the claim here is based on her contention that the value of the claims was different. The amount of the claim sought by the HOA in this case exceeded the amount of the lien because it included the HOA's request for fees and costs.

Similarly, her contention that the validity of the HOA's lien was not decided on the merits because her bankruptcy case was "dismissed" is meritless. As we discuss above, the validity of the lien was established when the HOA filed a proof of claim in Cruz's bankruptcy case and Cruz did not file an objection. (11 U.S.C. § 502(a); *Siegel, supra*, 143 F.3d at p. 529.) An allowed claim is the equivalent of a final judgment for res judicata purposes. (*Siegel, supra*, 143 F.3d at p. 529.)

Finally, we reject Cruz's argument that the doctrine of res judicata should not be applied in this case because its application does not "comport[] with fairness and sound public policy." Cruz

11

does not explain why the application of the doctrine here is unfair or against public policy. At best, she argues that she was prejudiced by the application of the doctrine because she expended resources in litigating the claim. Cruz cites no authority for her contention that her expenditure of resources in litigation renders the application of the doctrine either unfair or against public policy and we conclude it does not. Moreover, the trial court reduced the HOA's requested attorney fees in this case from $56,330.52 to $49,334 apparently based on the HOA's litigation of the merits of the lien's validity.[4]

On this record, we conclude that the trial court did not err when it held that the validity of the HOA's lien was established in Cruz's bankruptcy case and the lien's validity was not subject to reexamination. (*Association of Irritated Residents, supra*, 11 Cal.App.5th at p. 1218.)

---

[4] In her opening brief's conclusion, Cruz asks this court to reverse the trial court's judgment or, alternatively, to "deny Respondent any attorney[] fees billed in litigating this case." Cruz offers no explanation or authority for her alternative attorney fees request and we reject it as forfeited. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].

## IV.  DISPOSITION

The judgment is affirmed.  The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIM, J.


We concur:


BAKER, Acting P. J.


MOOR, J.


13